UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| EARL DEWAYNE HOLLOWAY, ) | |
| ) | No. 1:04-cv-286 |
| Petitioner, ) | *Mattice / Lee* |
| ) | |
| v. ) | |
| ) | |
| HOWARD CARLTON, Warden, ) | |
| ) | |
| Respondent. ) | |

## REPORT AND RECOMMENDATION

Earl Dewayne Holloway ("Holloway" or "petitioner") has filed a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 [Doc. No. 3]. Warden Howard Carlton ("respondent") has filed an answer [Doc. No. 9] and several addenda [Doc. Nos. 110-12, referred to herein as Addendum Nos. 1-28 as appropriate], which seeks dismissal of Holloway's *habeas corpus* petition. This matter has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(b) and Fed. R. Civ. P. 72 [Doc. No. 13]. After reviewing the record and applicable law, I conclude the § 2254 petition is without merit, and **RECOMMEND** that it be **DISMISSED**.

## I.    Standard of Review

Holloway may obtain *habeas* relief if he can demonstrate he is in custody pursuant to the judgment of a state court in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254. Under Rule 8 of the Rules Governing Section 2254 Proceedings in the United States District Courts, the Court is to determine, after a review of the response, the transcript, record of state court proceedings, and the expanded record, whether an evidentiary hearing is required. If a hearing is not required, the district judge is to dispose of the case as justice dictates. I conclude it is unnecessary to hold an evidentiary hearing in the present case.

The decision of the state courts is reviewed by this Court under 28 U.S.C. § 2254(d), which is a part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). This statute limits a federal district court's jurisdiction to review *habeas* claims on the merits. In particular, a court considering a *habeas* claim must defer to any decision by a state court concerning that claim unless the state court's judgment (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1) and (2).

Ordinarily when state courts issue orders denying relief without discussing the applicable law, this Court must "'conduct an independent review of the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented.'" *Brown v. Pitcher*, 19 Fed. Appx. 154, 156 (6th Cir. June 11, 2001), *cert. denied*, 534 U.S. 1057 (2001) (quoting *Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied*, 532 U.S. 947 (2001)). "That independent review, however, is not a full, *de novo*, review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Palazzolo v. Gorcyca*, 244 F.3d 512, 516 (6th Cir.), *cert. denied*, 534 U.S. 828 (2001) (quoting *Harris*, 212 F.3d at 943). Credibility findings made by state courts are entitled to the presumption of correctness. *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997); *Smith v. Jago*, 888 F.2d 399, 407 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990).

The standard to determine whether a waiver of a federal constitutional right is effective is governed by federal law. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). However, questions of historical fact, including inferences properly drawn from such facts are, in this context, entitled to the presumption of correctness accorded state court factual findings under 28 U.S.C. § 2254(d). *Parke v. Raley*, 506 U.S. 20, 35 (1992). A federal district court may dismiss a petition for the writ of *habeas corpus* without a evidentiary hearing if the findings of the state courts ". . . are sufficient to enable the federal district judge to determine that they are supported by the evidence and that the correct standards of law were applied." *Fowler v. Jago*, 683 F.2d 983, 989 (6th Cir. 1982), *cert. denied*, 460 U.S. 1098 (1983).

The grounds asserted by Holloway in support of his present § 2254 petition for writ of *habeas corpus* are similar to the grounds asserted by Holloway in his state post-conviction hearing and appeal in the Tennessee courts. In reviewing each ground asserted by Holloway as set forth below, I conclude that on those claims which are not procedurally defaulted, Holloway received a full and fair hearing on the merits of the factual issues in the state court proceedings, and the state court's findings of fact are supported by the record. Thus, I shall presume the findings of the state courts to be correct. 28 U.S.C. § 2254(d). I also conclude that the state courts adequately resolved the questions of law.

## II.   Procedural Background

Holloway was indicted by the Hamilton County (Tennessee) Grand Jury for one count of first degree premeditated murder, but, at trial, the jury convicted him of the lesser included offense of second degree murder (Addendum No. 1, at 4-5, 49-50). Holloway was sentenced to 22 years imprisonment at 85 percent (Addendum No. 1, at 53-54). On appeal, the Tennessee Court of

Criminal Appeals affirmed; and, the Tennessee Supreme Court denied Holloway's application for permission to appeal in an order entered on September 11, 2000 (Addenda No. 10 and 13). *See also State v. Holloway*, No. 03C01-9803-CR-00017, 1999 WL 281081 (Tenn. Crim. App., Knoxville, Apr. 30, 1999).

On October 16, 2000, Holloway filed a *pro se* motion for correction of plain error, which was denied by the trial court. Holloway then filed a notice of appeal to the Tennessee Court of Criminal Appeals concerning the denial of his motion. In an order entered on July 17, 2001, the court dismissed the appeal under Tenn. R. App. P. 3(b) because Holloway did not have an appeal as of right from the denial of the motion. The court also determined there was no error which merited review via the common law writ of *certiorari* (Addendum No. 17).

On November 17, 2000, Holloway filed a petition for post-conviction relief under Tenn. Code Ann. § 40-30-101, *et seq.* (Addendum No. 18 at 3-12). After the appointment of counsel, an amended petition for post-conviction relief was filed, and the State of Tennessee ("State") filed its opposition in response to the petition (Addendum No. 18 at 21-25). Holloway also filed a supplement to his amended post-conviction petition (Addendum No. 18 at 26-27). After a hearing on Holloway's post-conviction petition, the Hamilton County Criminal Court issued a memorandum and order denying the petition (Addendum No. 18 at 124-137). On appeal, the Tennessee Court of Criminal Appeals affirmed the denial of the petition; and, the Tennessee Supreme Court denied Holloway's application for permission to appeal in an order entered on November 3, 2003 (Addenda Nos. 23 , 25); *See also Holloway v. State*, E2002-02127-CCA-R3-PC, 2003 WL 21554537 (Tenn. Crim. App., Knoxville, July 10, 2003).

### III.   Factual Background

In the direct appeal of Holloway's second degree murder conviction, the Tennessee Court of Criminal Appeals summarized the evidence in this case as follows:[1]

> On September 5, 1995, Greg Vinson, a resident of the West Side housing project in Chattanooga, encountered the defendant and Elmonte Sims, who sat in a car parked in the College Hill Courts, a section of the West Side. When the defendant, who had known Vinson for several months, inquired whether anyone had drugs, Vinson responded that he did not know. At that point, the defendant and Sims left their vehicle and walked toward "the Cut," a narrow passageway between two tall apartment buildings. A short time later, Vinson saw two individuals pointing guns at Sims. The defendant was also present, but no one had pointed a weapon in his direction. The armed men quickly left "the Cut." The defendant and Sims remained. At that point, an individual named Reginald Hitchcock, who appeared to be unarmed, "just came out of the blue," approached Sims, and began to remove his rings. Vinson attempted to stop the robbery but, before he could intervene, the defendant shot Hitchcock in the back, thereby causing his death.

> On cross-examination, Vinson acknowledged that he had "done drugs" with the defendant about a year-and-a-half to two years earlier. He also acknowledged carrying a beeper on the day of the shooting. He testified that the entire incident took no more than two to three minutes.

> Dubois Montrell Ross testified that he lived near "the Cut" and had witnessed the shooting of his friend, Reginald Hitchcock. Ross, who at the time of the shooting was with the victim's brother, Marlin Borgne, witnessed the robbery. He identified the robber as his cousin, Michael Franklin. Ross claimed that Franklin aimed a gun at Sims but not at the defendant. He testified that after Franklin left, Hitchcock, who was unarmed, entered "the Cut" and started removing Sims' rings. Ross recalled seeing Vinson push Hitchcock away from Sims and try to prevent the robbery. At that point, Ross saw the defendant come from around the corner, remove his weapon from his belt, and shoot Hitchcock in the back. Before leaving the scene of the shooting, the defendant pointed the gun at Vinson and Ross.

---

[1] Holloway is referred to as the "defendant" in the Court of Appeals decision.

Ross stated that he saw Wayne Ware holding a "12-gauge . . . in his hand." When Ross told Borgne his brother had just been shot, Borgne retrieved the gun from Ware and chased the defendant. When the defendant pointed the gun at Borgne, Borgne fired. The bullets struck the defendant's car.

Otis Smart, Jr., also witnessed the shooting. He recalled that he was walking home from the store when he saw the defendant "pull out a gun, put it to Hitchcock's back and sho[o]t it." Smart testified that the victim did not have a weapon.

Dr. Frank King, the Hamilton County Medical Examiner, performed an autopsy on the victim. He concluded that the victim died of a gunshot wound to the left upper back. Dr. King testified that the range of fire was at least one to two feet from the victim's body. Test results indicated the presence of cocaine, marijuana, and alcohol.

Elmonte Sims, who had known the defendant for several years, was a witness for the defense. Charged with first degree murder for his role in the shooting, Sims acknowledged that his trial date had not been set. He recalled that when he arrived at the defendant's house on the day of the shooting, the defendant said that Vinson had been by and had arranged a "deal for some [crack cocaine]." When the three met at College Hill Apartments, Vinson told them he needed five hundred dollars but said they could pay when they were able. He recalled that Vinson then instructed them to return in thirty minutes because he was still "cooking up the drug."

Sims testified that he and the defendant returned to meet Vinson around 6:15 p.m., when a "bunch of guys jumped out from behind the building with guns." One individual approached Sims carrying a rifle. Sims recalled that he saw a shotgun, a small revolver, and a pistol with the trigger guard missing. He remembered that the person with the shotgun stole the money from his pockets. Sims, who admitted that he carried a gun with him at that time, testified that as one of the assailants held a small caliber weapon against the defendant's head, another held a weapon to his head. He claimed that Reginald Hitchcock then arrived, pointing a pistol at Sims and the defendant. Sims stated that Hitchcock then removed his necklace. When one of the assailants left the area, he passed his weapon to Michael Franklin. Sims testified that when Hitchcock ran towards him with the pistol aimed in his direction, the defendant intervened, shooting Hitchcock. Sims stated that he and the defendant then left the area as quickly as possible.

6

*Holloway*, 1999 WL 281081 at * 1-2.

**IV.    Issues**

The issues presented by Holloway are:

1.    Whether Holloway's trial counsel rendered ineffective assistance: (1) during his opening and closing statements when he referred to Holloway as a "crack addict"; and (2) when he allegedly refused to allow Holloway to testify at trial;

2.    Whether the trial court erroneously instructed the jury on the requisite *mens rea* for second degree murder;

3.    Whether Holloway was denied due process in the adjudication of his post-conviction petition, in light of the State's offer of a reduced sentence;

4.    Whether the trial court erroneously charged the jury on the range of punishment for second degree murder;

5.    Whether Holloway's trial counsel was ineffective for failing to object to the prosecutor's allegedly improper closing argument;

6.    Whether Holloway's trial counsel was ineffective for failing to properly impeach a State witness, Otis Smart;

7.    Whether Holloway's trial counsel was ineffective for failing to enure Holloway did not appear before the jury in prison clothing; and

8.    Whether Holloway's appellate counsel was ineffective for failing to raise the issue of the trial court's refusal to admit Holloway's entire statement to the police at trial in Holloway's direct appeal.

[Doc. No. 3].

**V.    Analysis**

**(1)    Ineffective Assistance of Counsel**

Holloway has raised several claims of ineffective assistance of trial or appellate counsel. As addressed more fully below, some of these claims are procedurally barred and some have been

7

discussed on the merits by the state courts.

### (a)    Procedurally barred claims of ineffective assistance

In his § 2254 petition, Holloway asserts he is entitled to *habeas* relief because his trial counsel was ineffective in both his opening and closing statements [Doc. No. 3 at 5, 6-3]. Holloway contends his trial counsel's opening and closing statements were prejudicial because counsel referred to Holloway as a "crack" addict [*id.*]. In addition, Holloway contends his trial counsel "deprived [him] of his constitutional right to testify on his own behalf" [Doc. No. 3 at 6-5].

These issues were addressed by the criminal trial court in its memorandum denying Holloway's post-conviction petition (Addendum 20). In that memorandum the trial court stated in relevant part:

> In his various filings, [Holloway] alleges that his trial counsel . . . was ineffective in the following particulars: (1) failing to communicate adequately with him, investigate the case, interview witnesses, subject the state's forensic evidence to independent review, call expert witnesses for the defense, explain the defense theory of the case to the jury, object to the locution "I know this" in the prosecutor's closing argument, and renew the objection to the jury instruction regarding the sentence range and release eligibility for second-degree murder or move for a mistrial thereon, . . . (3) referring to him as a drug addict, and (4) denying him his right to testify . . . .

*State v. Holloway*, No. 234967, memorandum at 2-3 (Ham. Cty. Crim. Ct. May 21, 2002). The trial court rejected Holloway's claims of ineffective assistance of trial counsel (Addendum No. 20) stating:

> The petitioner alleges that his trial counsel's performance was deficient in several particulars. Where a petitioner complains of the abridgement of his constitutional rights to effective assistance of counsel, he must prove that his counsel's performance was deficient and that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984); *Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). If he fails to

prove one element, then the court need not consider the other. *Henley v. State,* 960 S.W.2d 572, 580 (Tenn. 1997).

The performance of counsel is deficient if it is not "within the range of competence" applicable to attorneys in criminal cases. *Baxter v. Rose,* 523 S.W.2d 930, 936 (Tenn. 1975). A deficiency in counsel's performance is prejudicial when there is a reasonable probability that the outcome of the trial is unreliable. *Strickland,* 466 U.S. at 687.

In reviewing the performance of counsel, the court "must indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance and must evaluate counsel's performance from counsel's perspective at the time of the alleged error and in light of the totality of the evidence." *Hicks v. State*, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998) (citing *Strickland*, 466 U.S. at 695). The failure or harm of a particular strategy or tactic alone does not make counsel's performance deficient. *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996).

With respect to many of the petitioner's complaints regarding his trial counsel, there is no evidence that any deficiency was prejudicial . . . .

. . .

With respect to others of the petitioner's complaints regarding his trial counsel, there is no evidence of any deficiency on counsel's part. The petitioner complains that counsel referred to him as a drug addict. Presumably, the characterization was a demonstration of candour, an explanation of the petitioner's presence at the crime scene suggesting weakness more than viciousness, or an attempt to defuse a similar characterization by the state. The petitioner does not complain that it was untrue. Neither does the Court find it unreasonable.

The petitioner complains that counsel denied him his right to testify under the federal and state constitutions. Counsel discussed the petitioner's testimony with him several times. During a recess in the trial, they discussed it again, counsel advising the petitioner that he should not testify but that the decision was his, i.e., the petitioner's. The petitioner also discussed the matter with family members. According to his sister, he decided to follow counsel's advice, though it was contrary to his own judgment, on condition that counsel draw the jury's attention to certain points. Thereafter, counsel announced to the court that the petitioner would not testify, and the petitioner confirmed that that was his decision . . .

9

*Id.*, memorandum at 4-8 (Addendum 20).

On appeal, the Tennessee Court of Criminal Appeals affirmed the trial court. *Holloway*, 2003 WL 2155437 at * 7. However, the decision makes it clear that Holloway did not raise issues concerning his trial counsel's reference to him as a drug addict or denying his right to testify on appeal. In its decision, the Tennessee Court of Criminal Appeals stated:

> In his various post-conviction filings, the petitioner raised a multitude of claims, focusing for the most part on trial and appellate counsel's alleged constitutionally ineffective representation, the trial court's jury instructions regarding punishment, the abridgment of his right to testify, his involuntary appearance in jail clothing before the jury on the first day of trial, and several evidentiary rulings during trial. We need not detail each and every allegation because on appeal the petitioner has narrowed considerably the scope of his complaints. They are (1) that he was denied the right to effective representation by trial counsel's failure to object to a portion of the state's closing argument wherein prosecution counsel expressed his personal opinion; (2) that trial counsel's failure to impeach a state witness, Otis Smart, constituted ineffective assistance of counsel; (3) that trial counsel was constitutionally derelict in allowing the petitioner to appear before the jury in jail clothing; and (4) that appellate counsel rendered deficient representation by failing to raise on appeal the trial court's refusal to admit the petitioner's entire statement to the police.

*Id.* at * 2.

Because Holloway's *habeas corpus* petition was filed after April 24, 1996, *habeas* review of the decisions of the trial and appellate courts is governed by AEDPA. *Lancaster v. Adams*, 324 F.3d 423, 428 (6th Cir.), *cert. denied*, 540 U.S. 1004 (2003) (citing *Lindh v. Murphy*, 521 U.S. 320, 323 (1997)). Under AEDPA:

> the district court shall not grant a habeas petition with respect to any claim that was adjudicated on the merits in the state courts unless the adjudication resulted in a decision that: (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) was based upon an unreasonable determination of the facts in light of the

10

evidence presented to the state courts.

*Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (citing 28 U.S.C. § 2254(d)). "A state court decision is 'contrary to' the Supreme Court's precedent 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law' or 'if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the result reached by the Supreme Court].'" *Lancaster*, 324 F.3d at 429 (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). Further,

> "When a habeas petitioner fails to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state-court remedies are still available or due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review."

*Willis*, 351 F.3d at 744 (quoting *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000), *cert. denied*, 532 U.S. 989 (2001)). A procedural default may be avoided by a petitioner "only by showing that there was cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case." *Lancaster*, 324 F.3d at 436 (quoting *Seymour*, 224 F.3d at 550).

Cause for a procedural default means an "'objective factor external to the defense' that interfered with the petitioner's efforts to comply with the procedural rule." *Williamson v. Raney*, 157 F. Supp. 2d 880, 886 (W.D. Tenn. 2001) (quoting *Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991)). Further, a *habeas* petitioner may avoid the bar of procedural default and the need to show cause and prejudice, by establishing "that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* (quoting *Coleman*, 501 U.S. at 750). "The petitioner must show that 'a

11

constitutional violation has probably resulted in the conviction of one who is actually innocent.'"
*Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

As noted, Holloway could have, but did not, raise the issues of the alleged ineffective assistance of his trial counsel based upon counsel referring to Holloway as a drug addict and denying him his right to testify before the Tennessee Court of Criminal Appeals. Under Tenn. Code Ann. § 40-30-106, these issues have been waived.[2] Tenn. Code Ann. § 40-30-106(g) states in pertinent part

> (g)  A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented . . . .

Thus, Holloway's ineffective assistance claims concerning his counsel's reference to him as a "crack" addict and denial of his right to testify at trial are procedurally defaulted and may not be considered by the federal court on *habeas* review. *Seymour*, 224 F.3d at 549-50.

Moreover, Holloway has not shown cause for his failure to raise this issue before the Tennessee Court of Appeals because he has not shown an "objective factor external to the defense" that interfered with his ability to raise these issues before the appellate court. *Williamson*, 157 F. Supp. 2d at 886. Further, Holloway has also not shown "that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* (quoting *Coleman*, 501 U.S. at 750).

Therefore, I conclude that Holloway's is not entitled to *habeas* relief on his claims that his trial counsel was ineffective for referring to him as a "crack" addict in his opening and closing argument and for allegedly refusing to permit Holloway to testify at his trial as such claims are

---

[2] Tenn. Code Ann. § 40-30-106 was originally numbered § 40-30-206, but was renumbered § 40-30-106 in 2003.

procedurally barred [Doc. No. 3 at 5, 6-3, 6-5]. Thus, I **RECOMMEND** these claims be **DISMISSED**.

### (b)      Ineffective assistance claims addressed by the state courts

Holloway has raised several issues of ineffective assistance of trial and appellate counsel which were addressed by the state courts; namely: (1) ineffective assistance of trial counsel for failing to object to the prosecutor's allegedly improper closing argument [Doc. No. 3 at 6-11, 6-12]; (2) ineffective assistance of trial counsel for failing to properly impeach a State witness, Otis Smart [*id.* at 6-12 to 6-14]; (3) ineffective assistance of trial counsel for failing to ensure Holloway did not appear before the jury in prison clothing [*id.* at 6-14, 6-15]; and (4) ineffective assistance of appellate counsel for failing to appeal the trial court's refusal to admit Holloway's entire statement to the police at trial [*id.* at 6-15, 6-16].   These issues were addressed in the trial court's memorandum denying Holloway's petition for post-conviction relief.  *Holloway*, No. 234967, memorandum at 2-12; (Addendum No. 20).  Relying on the decision in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the trial court found Holloway's claims of ineffective assistance to be without merit. [*id.*]. On appeal, the Tennessee Court of Criminal Appeals affirmed the trial court's denial of Holloway's motion for post-conviction relief, relying on *Strickland*. *Holloway*, 2003 WL 21554537 at * 2, * 3-6; (Addendum No. 23).

As previously noted, under AEDPA, a federal court may not grant *habeas* relief unless the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir.), *cert. denied*, 543 U.S. 892 (2004) (quoting 28 U.S.C. § 2254(d)).  Both the trial court and the Tennessee Court of Criminal Appeals applied the relevant Supreme Court

precedent, *Strickland v. Washington*, 466 U.S. 668, 687 (1984)), to Holloway's claims of ineffective assistance of counsel. Thus, the question is whether the Tennessee Court of Criminal Appeals' ruling on Holloway's claims of ineffective assistance of counsel involved an unreasonable application of *Strickland. Miller v. Francis*, 269 F.3d 609, 613-14 (6th Cir. 2001), *cert. denied*, 535 U.S. 1011 (2002). "A state court decision will be deemed an 'unreasonable application' of clearly established federal law 'if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). "A federal habeas court may not find a state adjudication to be 'unreasonable' 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" *Id.* (quoting *Williams*, 529 U.S. at 411).

In determining the reasonableness of the application of *Strickland* to Holloway's claims of ineffective assistance, this Court must "apply a presumption of correctness to state court findings of fact for *habeas corpus* purposes unless clear and convincing evidence is offered to rebut the presumption." *McAdoo*, 365 F.3d at 493-94 (citing 28 U.S.C. § 2254(e)(1)). To establish ineffective assistance of counsel, it must be shown that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the trial unfair and the result unreliable. *Strickland*, 466 U.S. at 687. The same test applies to claims of ineffective assistance of appellate counsel. *Smith v. Jago*, 888 F.2d 399, 405 n.1 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Both prongs of the test must be satisfied, but a court need not address the issue of counsel's performance if the claim of ineffective assistance can be disposed of due to the lack of prejudice. *Strickland*, 466 U.S. at 987.

### i.     __Objection to Closing Argument__

With regard to Holloway's claim concerning his trial counsel's failure to object to the prosecution's alleged improper closing argument, Holloway complains about his trial counsel's failure to object to the following statement by the prosecutor:

> If you remember I asked him, Greg, what involvement did you have in that drug deal, not to vouch for him or not to try to persuade you that he didn't, he probably did. He probably set up that drug deal.  He probably went though with his plans to perp the defendants but they didn't know it, unless Earl had a part in it.  Take advantage of Money, *I don't know*.  __I know this__.  They went down there at a bad time because they were preparing to rob them.  They got into an area where a robbery could occur and when they did, it did happen fast . . .

(Addendum No. 3, Tr. 289) (emphasis added).  As the reviewing court noted in denying Holloway's post conviction petition, prior to the closing statements, the trial judge gave the jury the following instruction:

> I told you I would keep up with the program on this.  The program is you have heard all the proof, all the testimony, all the evidence and there is an opportunity now, a short period of the time for the attorneys to address you in the form of argument.  Remember my admonition initially in the case and that is the arguments of counsel are not evidence and proof in the case.  I will charge you further about it and in more detail about how to treat the remarks of counsel.  But remember that you can weigh the remarks of counsel in any way you like, but it is not evidence in the case.  Neither attorney is sworn and these are the attorney's beliefs and feelings about the case and should be treated as such.

[*id.* at 286-87].  The Tennessee Court of Appeals stated that

> However, we are not aware of any iron-clad prohibition against the use of the word "I" in closing argument.  The remark, "I don't know," referred to the rhetorical question whether the petitioner had been part of a plan to rob or "take advantage" of Sims.  That expression did not address the truth or falsity of any evidence but, rather, the lack of evidence.  The second remark, "I know this," was a general comment to the effect that the petitioner and Sims were in the wrong place, at

15

the wrong time; that rather obvious point was neither disputed nor
particularly relevant . . . .

*Holloway*, 2003 WL 21554537 at * 6.   Based upon the record, I conclude the application of
*Strickland* by the Tennessee Court of Appeals to Holloway's claim of ineffective assistance of
counsel was not objectively unreasonable.

### ii.        Proper Impeachment of Witness

Holloway also claims his counsel was ineffective for failing to properly impeach one of the
State's witnesses, Otis Smart.   At trial, Smart testified at the time of the shooting he was exiting a
store and at the point he got to the end of the building, he saw Holloway pull out a gun and shoot the
victim in the back. (Addendum No. 3, Tr. at 109).   Smart further testified that after he saw the victim
fall to the ground, he ran to where the victim fell and did not see where Holloway and his co-
defendant went after the shooting. [*id.* at 112].   On cross-examination, Smart testified he did not see
an individual named Michael Franklin at the scene of the shooting [*id.* at 122].   He then admitted
under cross-examination that he had given a statement to the police in which he stated he saw
Franklin at the scene [*id.* at 123].   On cross-examination, Smart further admitted that he arrived at
the scene of the shooting at the time Holloway reached for and pulled his gun out [*id.* at 127] and that
his view of the entire episode was very short [*id.* at 128].   Based upon the trial transcript set forth
above, I conclude the application of *Strickland* by the Tennessee Court of Appeals to reject
Holloway's claim his trial counsel was ineffective for failing to properly impeach Otis Smart was
not "objectively unreasonable."

### iii.        Appearance in Jail Clothes

With respect to his claim that his counsel was ineffective for allowing Holloway to appear
before the jury in jail clothes, Holloway states in his brief that

16

> on the first day of the trial [he] wore green camouflage clothes, which were too small for him, they were not ironed and they were "tacky" (Hearing Transcript, Page 65, lines 1-5). At the end of the first day of trial [Holloway] approached the judge and requested that he be allowed to wear civilian clothes for the remainder of the trial (Hearing Transcript, Page 66, lines 9-14)

[Doc. No. 3, at 6-14]. Holloway's sister, Rhonda Martin, testified at the hearing on his post-conviction petition, that she attempted to take clothes for Holloway to wear at his trial to the jail and was turned down twice (Addendum No. 18. at 100). She states she could not recall if she told Holloway's trial counsel about the clothes, but she stated she attempted to take the clothes to the jail based upon a conversation she had with Holloway [*id.* at 101].

While it is clear from Holloway's own testimony at the hearing on his post-conviction petition that he was unhappy with the green camouflage outfit he described as "jail clothes," based upon Holloway's own testimony it is not clearly apparent the outfit was identifiable as jail clothing. Further, based upon the testimony of Rhonda Martin, it is not clear that Holloway's trial counsel was aware Holloway's sister had attempted to deliver "civilian" clothes to Holloway at the jail and been turned away twice until Holloway approached the trial judge at the end of the first day of trial and asked to be allowed to wear "civilian" clothes. Further, at trial, Holloway called Elmonte Sims as a witness; and, on cross-examination, Sims admitted he and Holloway were detained together at the Hamilton County Jail (Addendum No. 3, Tr. at 259). Thus, the jury would have been aware at some point in the trial that Holloway was being detained in the jail. Based upon the record, I conclude the Tennessee Court of Appeal's application of *Strickland* to reject Holloway's claim that his trial counsel was ineffective for allowing him to appear before the jury on the first day of trial in a green camouflage outfit was not "objectively unreasonable."

iv.    **Admission of Entire Statement**

Holloway also claims his appellate counsel was ineffective for failing to raise the issue of the trial court's refusal to admit Holloway's entire statement to the police at trial. In denying Holloway's post-conviction petition, the reviewing court found that Holloway could not establish prejudice because the value of Holloway's taped statement to the defense was negligible. *Holloway*, No. 234967, memorandum at 11. Specifically, the court found:

> Admission of the taped statement, with its discrepancies, would have added nothing to the favorable testimony of Officer Woods and Mr. Sims and could have undermined Mr. Sims' credibility. For these reasons, the Court concludes that the trial court's erroneous exclusion of the statement was harmless beyond a reasonable doubt and that, as a consequence, counsel's failure to raise the issue on direct appeal was not prejudicial.

*Id.*, memorandum at 12.

Holloway's appellate counsel did not testify at the hearing on his petition for post-conviction relief; however, his trial counsel did. With regard to Holloway's statement which was excluded by the trial court, Holloway's trial counsel testified there were inconsistences between the proof at trial and Holloway's statement to the police (Addendum No. 19, Tr. at 50-51). Holloway's trial counsel further testified the testimony of Elmonte Sims was the same as Holloway's story/statement (*id.* at 51). Finally, Holloway's trial counsel stated that although the trial court may have erred in excluding Holloway's statement to the police on cross-examination, the same account of events was heard by the jury from another witness, Sims; and, had the statement been played for the jury, the jury would have heard major inconsistencies which were glaring in light of the other testimony at trial (*id.*).

A reviewing court's scrutiny of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689. Given the testimony that Holloway's statement to the police was cumulative of other

evidence which was presented at trial and there were major, if not glaring, inconsistencies between Holloway's recorded statement and the testimony of other witnesses at trial, the conclusion of the state court that Holloway could not establish prejudice stemming from appellate counsel's failure to raise this issue in Holloway's direct appeal is not an "objectively unreasonable" application of *Strickland.*

Therefore, I conclude Holloway is not entitled to *habeas* relief on his claims of: (1) ineffective assistance of trial counsel for failing to object to the prosecutor's allegedly improper closing argument [Doc. No. 3 at 6-11, 6-12]; (2) ineffective assistance of trial counsel for failing to properly impeach a State witness, Otis Smart [*id.* at 6-12 to 6-14]; (3) ineffective assistance of trial counsel for failing to ensure Holloway did not appear before the jury in prison clothing [*id.* at 6-14, 6-15]; and (4) ineffective assistance of appellate counsel for failing to appeal the trial court's refusal to admit Holloway's entire statement to the police at trial [*id.* at 6-15, 6-16] as these claims are **MERITLESS**; and, I **RECOMMEND** they be **DISMISSED**.

### (2)    Erroneous Jury Instructions on *Mens Rea*

Holloway contends the trial court committed reversible error in the instructions given to the jury on the *mens rea* for second degree murder [Doc. No. 3 at 6-7 to 6-9]. However, a review of the record shows this issue was never raised in the state courts. Thus, this claim is barred as procedurally defaulted. *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 424-25 (6th Cir. 2003). Holloway has not shown cause for his procedural default. *Williamson*, 157 F. Supp. at 888. Further, Holloway cannot show that a miscarriage of justice will result from enforcing the procedural default in this instance. *Lancaster*, 324 F.3d at 437.

The trial court's jury instructions on second degree murder stated:

For you to find the defendant guilty of Murder in the Second Degree, the State must prove beyond a reasonable doubt the following: (1) that the defendant unlawfully killed the alleged victim; and (2) that the defendant acted knowingly.

> Knowing.  A person acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist.  A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

> The element of knowing is also established if it is shown that the defendant acted intentionally.

> Intentional.  A person acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result.

(Addendum No. 3 at 329-330).

Holloway contends these instructions were prejudicial because "a knowing second degree murder is strictly a 'result-of-conduct' offense.  In this regard a jury instruction as occurred in the trial proceedings of the petitioner, that allows a jury to convict on second degree murder based solely upon the awareness of the nature of the conduct or circumstances surrounding the conduct improperly lessens the state's burden of proof." [Doc. No. 3 at 6-8].

However, in affirming Holloway's conviction on direct appeal, the Tennessee Court of Criminal Appeals stated in pertinent part:

> we must conclude that the evidence is sufficient to support the defendant's conviction.  At the time of the offense, second degree murder was defined as a "knowing killing of another" Tenn. Code Ann. § 39-13-210(a).  Our code defines "knowing" as follows:

>> "Knowing" refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct

20

or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

Tenn. Code Ann. § 39-11-302(b).

The defendant argues that "as a matter of law this homicide cannot be more than voluntary manslaughter." He contends that the robbery qualified as "adequate provocation" and that he was in a justifiable state of passion when the shooting occurred.

The witnesses for the state, however, testified that the defendant pulled his weapon and shot the unarmed victim in the back at close range. It was the jury's prerogative to accredit the entire testimony and theory of the state that the victim was unarmed and not a threat to the defendant. The state witnesses testified that Sims was the victim of the robbery, not the defendant. That presented a factual issue. "When the evidence is conflicting, the jury must resolve these conflicts, under proper instructions, and decide whether the homicide is murder or manslaughter." *State v. Robert Zandi*, No. 02C01-9703-CC-00122, slip op. at 5 (Tenn. Crim. App., at Jackson, Jan 15, 1998). Here, the trial judge provided instructions on manslaughter, self-defense, and defense of another. The jury rejected each of those alternatives and concluded the defendant had committed a "knowing killing" and was thus guilty of second degree murder. This court may not reweigh the evidence nor substitute its own view for that properly reached by the finder of fact.

*Holloway*, 1999 WL 281081 at * 2 - 3 (Addendum No. 10).

Based upon the above discussion, Holloway cannot show his failure to present his *mens rea* claims will result in the conviction of a person who is actually innocent. *Schulp*, 513 U.S. at 327; *Williamson*, 157 F. Supp. 2d at 886. In particular, the definition of "knowing" used by the Tennessee Court of Appeals in its discussion of the sufficiency of the evidence on Holloway's direct appeal is the same definition of "knowing" used by the trial court in its jury instructions during Holloway's criminal trial.

Therefore, I conclude that Holloway is not entitled to *habeas* relief on his claim the trial

21

court's jury instruction on the *mens rea* for second degree murder was erroneous as the claim is procedurally barred [Doc. No. 3 at 6-7 to 6-9]; and, I **RECOMMEND** it be **DISMISSED**.

### (3)  The State's Offer of a Reduced Sentence

In his § 2254 petition, Holloway asserts he is entitled to *habeas corpus* relief because "the trial court ignored the violation of his constitutional rights by agreeing with the state's illegal attempt to offer petitioner a sentence reduction from twenty two (22) to Fifteen (15) years served at 100%" [Doc. No. 3 at 5, 6-1].  Holloway further asserts "the state's attempt to change [his] sentence prior to the post-conviction proceedings clearly proves that the state knew that [his] constitutional rights had been violated in the criminal trial proceedings against him." [*id.* at 6-1].  Holloway further asserts that, as a matter of Tennessee law, his sentence could not have been reduced at the point in time he was offered a sentence reduction following his jury trial conviction [*id.*].

At the beginning of the hearing on Holloway's post-conviction petition, his counsel stated:

> The other thing I would like to bring up before we get started is that this morning, [the prosecutor] made us an offer on this case to reduce the sentence based on the second degree murder to fifteen years at a hundred percent.  Obviously, I communicated to Mr. Holloway which he has turned down.

(Addendum No. 19 at 8).  Following the March 18, 2002 hearing on his post-conviction petition, the trial court issued a memorandum and order denying the post-conviction petition (Addendum 20). The trial court's memorandum denying Holloway's post-conviction petition does not mention the colloquy with his counsel concerning the State's offer of a reduced sentence [*id.*].

Again, a review of the record shows this issue was never raised in the state courts.  In particular, it was not raised in Holloway's post-conviction brief on appeal to the Tennessee Court of Criminal Appeals.  Thus, this claim is barred as procedurally defaulted. *Gulertekin*, 340 F.3d at

424. Further, Holloway has not shown cause for his procedural default, *Williamson*, 157 F. Supp. 2d at 888; and, he cannot show a miscarriage of justice will result from enforcing his procedural default in this instance. *Lancaster*, 324 F.3d at 437. This is particularly true because Holloway's assertion that the State attempted to reduce his sentence prior to the post-conviction proceedings because the State knew his constitutional rights had been violated in the criminal proceedings, is conclusory and unsupported by any evidence in the record. Conclusory allegations without any evidentiary support are not grounds for *habeas corpus* relief. *Prince v. Straub*, 78 Fed. Appx. 440, 442 (6th Cir. Sep. 12, 2003), *cert. denied*, 540 U.S. 1115 (2004) (citing *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3d Cir.), *cert. denied*, 502 U.S. 902 (1991)).

Therefore, I conclude that Holloway is not entitled to *habeas* relief on his claim the state courts ignored the violation of his constitutional rights based upon the State's offer of a reduced sentence because the claim is procedurally barred [Doc. No. 3 at 5, 6-1]. Thus, I **RECOMMEND** this claim be **DISMISSED**.

### (4)      Erroneous Instructions Regarding Sentencing Range

Holloway contends his constitutional rights were violated by the trial court's erroneous instructions concerning the sentence he would receive if convicted of second degree murder [Doc. No. 3 at 6-9 to 6-10]. The trial court gave the jury the following instruction on ranges of punishment:

> Ranges of Punishment. Several different criminal offenses are defined in these instructions. Each of those offenses carries with it a certain range of sentence to which a convicted defendant would be subject. Fines are described in a separate part of these instructions. Although you will not be concerned with fixing any sentence, for your information only, the Court will set out ranges of sentences applicable to each of the criminal offenses described in these instructions. However, you may weigh and consider the meaning of a sentence of imprisonment.

23

> The punishment as set forth in the Sentencing Act for the crime of murder in the first degree, is as follows: Life imprisonment.
>
> You are further informed that the minimum number of years a person sentenced to imprisonment for this offense must serve before reaching the earliest release eligibility date is: Not available.
>
> The ranges of punishment as set forth in the Sentencing Act for the crime of murder in the second degree is as follows: 15 to 25 years.
>
> You are further informed that the minimum number of years a person sentenced to imprisonment for this offense must serve before reaching the earliest release eligibility date is 12.75 years.

(Addendum No. 3 at 346-347). Holloway was sentenced to 22 years imprisonment at 85% pursuant to Tenn. Code Ann. § 40-35-501 on his conviction of second degree murder (Addendum No. 1 at 53).

In its decision denying Holloway's *pro se* motion to correct for plain error, the Tennessee Court of Appeals stated:

> On October 16, 2000, that [Holloway] filed a *pro se* motion for correction of plain error. [Holloway] claims the trial court erred in informing the jury of the minimum number of years that a person convicted of the offense of second degree murder must serve before reaching the earliest release eligibility date. [Holloway] asserts that it was only after being erroneously informed that he "would only serve 12.75 years before parole eligibility" that the jury convicted him of second degree murder. [Holloway] avers that the jury should have been instructed that his full sentencing range for this offense was 15-60 years because the state intended to seek enhanced punishment in the defendant's case. The trial court denied the motion to correct plain error and [Holloway] appealed to this court.
>
> In support of dismissal of the appeal, the state asserts the rules of appellate procedure do not provide for an appeal as of right from the denial of a motion to correct plain error . . . This court agrees. Further, in some limited instances this court has permitted persons to come to this court who did not meet the requirements for an appeal as of right . . . however, "appeals via certiorari should rarely be granted to review motions that assert sentencing infirmities which do not rise to the level of illegality or voidness." The record before us reflects that [Holloway] was sentenced to 22 years at 85% as mandated by

24

Tenn. Code Ann. § 40-35-501. This was within the applicable sentencing range of 15-25 years for second degree murder. The jury was properly instructed under the law then in effect that a person convicted of this offense would serve, at a minimum, 85% of 15 years of 12.75 years imprisonment before being eligible for parole.

*State v. Holloway*, No. E2000-030402-CCA-R3-CD, slip op. at 1-2 (Tenn. Crim. App., Knoxville, Jul. 17, 2001) (Addendum No. 17). A footnote to the decision states that "Tenn. Code Ann. § 40-35-201 formerly provided that the defendant was entitled to 'have the jury know the range of punishment applicable to the charges before deciding guilt or innocence.' This statute was amended in 1998 to prohibit comment on possible penalties." *Id.*, slip op. at 2 n.1.

In his post-conviction petition, Holloway alleged that the jury instructions erroneously stated the sentencing range and the release eligibility percentage for second degree murder and he also asserted claims of ineffective assistance of trial and appellate counsel in failing to challenge the instruction. The reviewing court rejected these claims as follows:

> Finally, with respect to one of petitioner's complaints, that counsel's failure to renew the objection to the jury instruction regarding the sentence range and release eligibility for second-degree murder or move for a mistrial thereon, the disposition of the petitioner's appeal from the dismissal of his motion for correction of plain error precludes the Court from reconsidering the matter in the present context. Even could the Court consider the matter, however, it would find no ground for relief. Under Tenn. Code Ann. § 40-35-106, the petitioner did not qualify as a Range II offender with respect to the class A felony of second-degree murder, his prior felony convictions being for Class D and E offenses. The Court concludes that there is no merit in the petitioner's claim of ineffective assistance of trial counsel.

*Holloway*, No. 234967, memorandum at 8-9 (Addendum No. 20). With regard to Holloway's claim of ineffective assistance of appellate counsel, the court stated:

> The petitioner alleges that the trial court erred in several particulars and blames appellate counsel for not raising claims on direct appeal.

25

The Court's disposition of the same issues in the context of the petitioner's claims of ineffective assistance of counsel, *supra*, makes their reconsideration in the present context unnecessary.

*Id.*, memorandum at 13.

In its decision, which affirmed the reviewing court's denial of Holloway's motion for post conviction relief, the Tennessee Court of Appeals stated in pertinent part:

> On October 16, 2000, the petitioner filed a *pro se* "motion for correction of plain error," alleging that the trial court did not consider the state's written notice of intent to seek enhanced punishment and, therefore, incorrectly instructed the jury regarding the range of punishment for second-degree murder and release eligibility for that offense. While that motion was pending, the petitioner filed a *pro se* petition for post-conviction relief on November 17, 2000. The post-conviction court appointed counsel to represent the petitioner, and numerous amendments, supplements, and memoranda were thereafter filed. On July 17, 2001, a panel of this court dismissed the petitioner's appeal from the denial of his motion to correct plain error on the basis that Tennessee Rule of Appellate Procedure 3(b) did not afford appellate review of the matter and that, at any rate, the instructions correctly stated the law applicable at that time. *State v. Earl Holloway*, No. E2000-03042-CCA-R3-CD (Tenn. Crim. App., Knoxville, July 17, 2001).

*Holloway*, 2003 WL 21554537 at * 1.

In his response to Holloway's *habeas* petition, respondent asserts review of this issue is procedurally barred because Holloway failed to properly raise and preserve it in the state courts [Doc. No. 9 at 18-19). In determining whether there has been a procedural default and the effect of the procedural default upon federal review of a state conviction, the following factors must be considered by the district court:

> (1) a state procedural rule exists that applies to the petitioner's claim, (2) the petitioner failed to comply with the rule, (3) the state court actually applied the state rule in rejecting the petitioner's claim, and (4) the state procedural rule is an adequate and independent ground upon which the state can rely to deny relief.

*Patterson v. Haskins*, 316 F.3d 596, 604 (6th Cir. 2003). The procedural default will not bar *habeas corpus* consideration of a claim "unless the last state court rendering a reasoned opinion in the case 'clearly and expressly states its judgment rests on a state procedural bar.'" *Id.* (quoting *Harris v. Reed*, 489 U.S. 255, 260 (1989).

A state procedural rule did exist which applied to Holloway's claim that the trial court's jury instruction on the range of sentencing for second degree murder was error. Holloway did not comply with this rule when he failed to challenge the trial court's jury instruction concerning the range of sentencing for second degree murder on direct appeal; and, in denying Holloway's *pro se* motion for correction of plain error, the Tennessee Court of Criminal Appeals relied, at least in part, on the procedural rule. The procedural bar would have been an adequate and independent ground for the denial of Holloway's *pro se* motion for correction of plain error. Nevertheless, the Tennessee Court of Criminal Appeals did not rely solely on the procedural rule in denying Holloway's *pro se* motion for correction of plain error, it also discussed the merits of his claim that the trial court's jury instruction on the range of sentencing for second degree murder was error. *Holloway*, No. E2000-030402-CCA-R3-CD, slip op. at 1-2. In effect, the Tennessee Court of Criminal Appeals found the trial court's jury instruction on the range of sentencing for second degree murder was a proper statement of the law of Tennessee as it existed at that time. *Id.*; *Holloway*, 2003 WL 21554537 at * 1.

In his response, respondent asserts the Tennessee Court of Appeal's statements about the merits of Holloway's challenge to the trial court's jury instruction on the sentencing range for second degree murder should be considered *dicta*; and, this court should conclude the claim is procedurally barred [Doc. No. 9 at 20]. It is possible to interpret the decision of the Tennessee Court of Appeals

denying Holloway's challenge to the trial court's jury instruction on the range of sentencing as resting on a state procedural bar. However, it is also possible to read the decision as stating in passing that Holloway failed to comply with the procedural rules, but also addressing his claim on the merits. *See Williams v. Coyle*, 260 F.3d 684, 697 (6th Cir. 2001), *cert. denied*, 536 U.S. 947 (2002) (where decision simply discusses procedural bar in passing, but addresses the merits, decision will not be found to rest on a procedural bar). However, it is not necessary to resolve the issue of whether this claim is procedurally barred. Giving Holloway the benefit of the doubt and assuming *arguendo*, his claim concerning the jury instruction on the range of sentencing is not procedurally barred, the claim is not a basis for habeas relief.

"To warrant habeas relief, . . . jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair." *Hardaway v. Withrow*, 305 F.3d 558, 565 (6th Cir. 2002), *cert. denied*, 538 U.S. 1036 (2003) (quoting *Scott v. Mitchell*, 209 F.3d 854, 882 (6th Cir. 2000)). The question is "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). Not only is the particular jury instruction complained of by Holloway not "ailing," but it did not so infect the trial as to render it unfair or render Holloway's conviction a violation of due process. The sentence Holloway ultimately received, 22 years imprisonment at 85% pursuant to Tenn. Code Ann. § 40-35-501, falls precisely withing the range specified by the trial court in its jury instruction on the sentencing range applicable to a conviction for second degree murder.

Therefore, I conclude that Holloway is not entitled to *habeas* relief on his claim the trial court's jury instruction on the range of sentencing applicable to a conviction for second degree

murder as the claim is **MERITLESS** [Doc. No. 3 at 6-9 to 6-10]. Thus; I **RECOMMEND** it be **DISMISSED**.

Accordingly, it is **RECOMMENDED** that Holloway's § 2254 *habeas corpus* petition [Doc. No. 3] be **DENIED AND DISMISSED WITH PREJUDICE**. In addition, after review of this case pursuant to 28 U.S.C. § 1915(a)(3) and Rule 24 of the Federal Rules of Appellate Procedure, I **RECOMMEND** that the court **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, I **RECOMMEND** any application by Holloway for leave to proceed *in forma pauperis* on appeal be **DENIED**. 28 U.S.C. § 1915(a)(3); Fed. R. Civ. P. 24. I further **RECOMMEND** that should Holloway file timely notice of an appeal, such notice should be treated as an application for a certificate of appealability, which should be **DENIED** since he has failed to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Rule 22(b) of the Federal Rules of Appellate Procedure.

## VI.  <u>Conclusion</u>

Accordingly, and as set forth more fully above, it is **RECOMMENDED**[3] that:

1).     Holloway's § 2254 *habeas corpus* petition [Doc. No. 3] be **DENIED AND DISMISSED WITH PREJUDICE**;

2).     Any application by Holloway for leave to proceed *in forma pauperis* on

---

[3] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

appeal be **DENIED**; and

3).     Should Holloway file a timely notice of an appeal, such notice be treated as an application for a certificate of appealability and **DENIED**.


                              _s/Susan K. Lee_____

                              SUSAN K. LEE

                              UNITED STATES MAGISTRATE JUDGE